UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOSEPH D. FAIR, JR., | No. 2:20-cv-01107-TLN-DB |
| Petitioner, | |
| v. | FINDINGS AND RECOMMENDATIONS |
| MATTHEW ATCHLEY, | |
| Respondent. | |

Petitioner Joseph Fair, a state prisoner, proceeds pro se and in forma pauperis with a petition for a writ of habeas corpus under 28 U.S.C. § 2254. Petitioner challenges his 2017 convictions for attempted premeditated murder and assault with a firearm, with enhancements for personally discharging a firearm resulting in paralysis and participating in a street gang. Petitioner raises one claim in his first amended habeas petition—the trial court prejudicially erred when it permitted a police sergeant to identify petitioner as the man in the bar's surveillance video. For the reasons set forth below, this court recommends denying the petition.

## BACKGROUND

I. **Facts Established at Trial**

The California Court of Appeal for the Third Appellate District provided the following summary of the facts presented at trial:

> Defendant's victim, Derek S., went with his brother to the

1

Progressive Elks Lodge, a social club in Del Paso Heights, on the night of December 12, 2014. The lodge was a hangout for the Del Paso Heights Bloods gang.

Derek pulled cash out of his pocket and ordered drinks. Will Fields, a validated member of the Del Paso Heights Bloods, was glaring at Derek. This led to a verbal confrontation between Fields and Derek that turned physical. The fight spread before the club's bouncers ended it and threw Derek out. As Derek ran to the car, he was shot in the back and fell. He was taken to the hospital, where he underwent multiple surgeries for a serious gunshot wound. As a result of the shooting, he spent several months in the hospital and was rendered a paraplegic.

While in the hospital, Derek told a police detective that he knew the shooter but would not identify the man or go to court because he did not want to "snitch." Derek also told the detective that he and his brother were jumped inside the lodge by some members of the Elm Street gang, and the man who shot him had tried to sneak up on him before his brother knocked the man down.

Derek's mother knew defendant from the neighborhood and church. She knew that he was "from 38, and he's a blood." She explained that "38" refers to Del Paso Heights gang "38 Elm Street." When he was finally able to talk--more than a week after the shooting--Derek told his mother that Fields had been giving him hard looks and head butted him, after which they all jumped him. He told her that defendant shot him.

Patrick Scott is a bouncer for the Elks Lodge. At trial, he testified that he could not recall the events of the incident because he was drunk that night. He told a police detective that, after he threw Derek out of the club, "I seen somebody come with dreads with a pea coat, shooting." He saw a man point a gun at Derek. Scott initially denied knowing the shooter, but later admitted knowing him but would not name him out of fear of retaliation. He told the detective that the shooter would be found by looking through the rolls of the Elm Street Gangsters. When shown a photograph of defendant, Scott hit it and--addressing defendant's photograph as if he were "scolding" it--said, "That's why I don't understand why you did that. That was dumb. The situation was under control. You shoulda never did that. Never." When Scott told defendant a surveillance video showed him pulling a gun from his pocket, defendant exclaimed, "Fuck! Fuck!" and then hung up the phone.

Videos from the club's surveillance system were played to the jury. An African-American man wearing a pea coat, with dreadlocks and a baseball cap on backward, is seen leaning on a car and walking through the parking lot about 20 minutes before the shooting. He walks through the eating area of the club while smiling and wearing his hat forward, about one minute before the shooting. The videos also show a fight in the bar area that involved multiple people before being broken up. A man (Derek) is thrown out of the club after the fight ends. The man in the pea coat is seen leaving through the same door seconds later while pulling a gun out of his right coat pocket.

2

> During her testimony, Derek's mother identified defendant in a surveillance video, as the man wearing a hat and pea coat who walked in and was also seen walking outside the bar, and who took the gun out of his coat pocket. As we discuss in detail *post*, Sacramento Police Sergeant Michael Lange also identified the man wearing the pea coat in the videos as defendant.
>
> Chou Vang, a district attorney's investigator and formerly a Sacramento Police Detective in the gang unit, testified as an expert on gangs. As relevant to defendant's claim of error on appeal, Vang testified that gang members often decline to provide information to the police to avoid being labeled as a snitch. Fear of retaliation often causes members of the community to refuse cooperating with investigations related to gang activity. The prosecution presented additional evidence that defendant had multiple contacts with gang members since 2007, which included occasions where he committed crimes with them. E-mails relating to gang members and gang killings that were sent to defendant while he was in jail were presented, as were photographs of his gang-related tattoos, and the recording of a jail conversation between defendant and another person in which they referred to each other as "38" and talked about other gang members in jail. Based on this evidence, Vang opined that defendant was a member of the Del Paso Heights Bloods.
>
> Defense witness, Elijah Montaie, identified by Vang as a member of the Del Paso Heights Bloods, testified that he was a bouncer at the club and that defendant was in the club's back patio area about 10 to 15 minutes before the shooting. After the fight, Scott pushed Derek out of the club, and Montaie locked the door. Defendant was in the patio area when the shooting took place.

(ECF No. 30-10 at 2–4); People v. Fair, No. C085633, 2018 WL 6251408, at *1–2 (Cal. Ct. App. Nov. 28, 2018).

**II.  Procedural Background**

  **A.  Judgment**

A jury convicted petitioner of assault with a firearm and attempted premeditated murder, finding true the allegations that he used a firearm, personally inflicted great bodily injury, and committed the offense for a street gang. (ECF No. 30-2 at 269–73.) The trial court imposed an aggregate prison term of 40 years to life plus two years in state prison. (Id. at 299–300.)

**III.  State Appeal, State Habeas, and Federal Proceedings**

Petitioner timely appealed his convictions, arguing that (1) the trial court prejudicially erred when it permitted a police sergeant to identify him in a surveillance video, and (2) requesting remand based on a legal change regarding the firearms enhancements attached to his

3

convictions. The state appellate court remanded on firearm enhancement issue, but otherwise affirmed the convictions. (ECF No. 30-10.) Petitioner sought review in the California Supreme Court. (ECF No. 30-11.) In February 2019, the California Supreme Court summarily denied review. (ECF No. Id.)

The first amended petition was filed in June 2021. (ECF No. 15.) The court stayed the petition, giving petitioner time to exhaust two claims for relief. (ECF No. 22.) After petitioner failed to file any status reports, on July 1, 2022, the court ordered petitioner to show cause why the stay of this case should not be lifted. (ECF No. 23.) After petitioner failed to do so, the court lifted the stay. (ECF Nos. 24 & 27.) Respondent has filed an answer. (ECF Nos. 30 & 31.) Petitioner did not file a traverse.

**STANDARDS OF REVIEW APPLICABLE TO HABEAS CORPUS CLAIMS**

A court can entertain an application for a writ of habeas corpus by a person in custody under a judgment of a state court on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States. 28 U.S.C. § 2254(a). A federal writ is not available for an alleged error in the interpretation or application of state law. See Wilson v. Corcoran, 562 U.S. 1, 5 (2010); Estelle v. McGuire, 502 U.S. 62, 67–68 (1991); Park v. California, 202 F.3d 1146, 1149 (9th Cir. 2000) (stating that "a violation of state law standing alone is not cognizable in federal court on habeas.").

This court may not grant habeas corpus relief unless the adjudication of the claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). For purposes of applying § 2254(d)(1), "clearly established federal law" consists of holdings of the United States Supreme Court at the time of the last reasoned state court decision. Greene v. Fisher, 565 U.S. 34, 37 (2011); Stanley v. Cullen, 633 F.3d 852, 859 (9th Cir. 2011) (citing Williams v. Taylor, 529 U.S. 362, 405–06 (2000)). Circuit court precedent "'may be persuasive in determining what law is clearly established and whether a state court applied that

1  law unreasonably.'" Stanley, 633 F.3d at 859 (quoting Maxwell v. Roe, 606 F.3d 561, 567 (9th

2  Cir. 2010)). But it may not be "used to refine or sharpen a general principle of Supreme Court

3  jurisprudence into a specific legal rule that th[e] [Supreme] Court has not announced." Marshall

4  v. Rodgers, 569 U.S. 58, 64 (2013) (per curiam) (citing Parker v. Matthews, 567 U.S. 37 (2012));

5  see also Carey v. Musladin, 549 U.S. 70, 76–77 (2006). Nor may circuit precedent be used to

6  "determine whether a particular rule of law is so widely accepted among the Federal Circuits that

7  it would, if presented to th[e] [Supreme] Court, be accepted as correct." Marshall, 569 U.S. at 64.

8       A habeas corpus application can invoke § 2254(d)(1) in two ways. First, a state court

9  decision is "contrary to" clearly established federal law if it either applies a rule that contradicts a

10 holding of the Supreme Court or reaches a different result from Supreme Court precedent on

11 "materially indistinguishable" facts. Price v. Vincent, 538 U.S. 634, 640 (2003) (quoting

12 Williams, 529 U.S. at 405–06). Second, "under the 'unreasonable application' clause, a federal

13 habeas court may grant the writ if the state court identifies the correct governing legal principle

14 from th[e] [Supreme] Court's decisions but unreasonably applies that principle to the facts of the

15 prisoner's case.'" Lockyer v. Andrade, 538 U.S. 63, 75 (2003) (quoting Williams, 529 U.S. at

16 413); Chia v. Cambra, 360 F.3d 997, 1002 (9th Cir. 2004). "[A] federal habeas court may not

17 issue the writ simply because that court concludes in its independent judgment that the relevant

18 state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that

19 application must also be unreasonable." Williams, 120 S. Ct. at 1522; see also Schriro v.

20 Landrigan, 550 U.S. 465, 473 (2007); Andrade, 538 U.S. at 75. "A state court's determination

21 that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could

22 disagree' on the correctness of the state court's decision." Harrington v. Richter, 562 U.S. 86, 101

23 (2011) (quoting Yarborough v. Alvarado, 541 U.S. 652, 664 (2004)). Accordingly, "[a]s a

24 condition for obtaining habeas corpus from a federal court, a state prisoner must show that the

25 state court's ruling on the claim being presented in federal court was so lacking in justification

26 that there was an error well understood and comprehended in existing law beyond any possibility

27 for fairminded disagreement." Richter, 562 U.S. at 786–87.

28 ////

1    A petitioner may also challenge a state court's decision as being an unreasonable
2 determination of facts under § 2254(d)(2). Hibbler v. Benedetti, 693 F.3d 1140, 1146 (9th Cir.
3 2012). Challenges under this clause fall into two categories; first, the state court's findings of fact
4 "were not supported by substantial evidence in the state court record," or second, the "fact-
5 finding process itself" was "deficient in some material way." Id.; see also Hurles v. Ryan, 752
6 F.3d 768, 790–91 (9th Cir. 2014) (If a state court makes factual findings without an opportunity
7 for the petitioner to present evidence, the fact-finding process may be deficient and the state court
8 opinion may not be entitled to deference.). Under the "substantial evidence" category, the court
9 asks whether "an appellate panel, applying the normal standards of appellate review," could
10 reasonably conclude that the finding is supported by the record. Hibbler, 693 F.3d at 1146 (9th
11 Cir. 2012) (quoting Taylor v. Maddox, 366 F.3d 992, 999–1000 (9th Cir. 2004), overruled on
12 other grounds by Murray v. Schriro, 745 F.3d 984, 999–1001 (9th Cir. 2014)). The "fact-finding
13 process" category, however, requires the federal court to "be satisfied that any appellate court to
14 whom the defect [in the state court's fact-finding process] is pointed out would be unreasonable
15 in holding that the state court's fact-finding process was adequate." Hibbler, 693 F.3d at 1146–47
16 (quoting Lambert v. Blodgett, 393 F.3d 943, 972 (9th Cir. 2004)). The state court's failure to hold
17 an evidentiary hearing does not automatically render its fact-finding process unreasonable. Id. at
18 1147. Further, a state court may make factual findings without an evidentiary hearing if "the
19 record conclusively establishes a fact or where petitioner's factual allegations are entirely without
20 credibility." Perez v. Rosario, 459 F.3d 943, 951 (9th Cir. 2006) (citing Nunes v. Mueller, 350
21 F.3d 1045, 1055 (9th Cir. 2003)).

22    If a petitioner overcomes one of the hurdles posed by section 2254(d), this court reviews
23 the merits of the claim de novo. Delgadillo v. Woodford, 527 F.3d 919, 925 (9th Cir. 2008); see
24 also Frantz v. Hazey, 533 F.3d 724, 737 (9th Cir. 2008) (en banc). For claims upon which a
25 petitioner seeks to present new evidence, the petitioner must meet the standards of 28 U.S.C. §
26 2254(e)(2) by showing that he has not "failed to develop the factual basis of [the] claim in State
27 court proceedings" and by meeting the federal case law standards for the presentation of evidence
28 in a federal habeas proceeding. See Cullen v. Pinholster, 563 U.S. 170, 186 (2011).

This court looks to the last reasoned state court decision as the basis for the state court judgment. Stanley, 633 F.3d at 859; Robinson v. Ignacio, 360 F.3d 1044, 1055 (9th Cir. 2004). "[I]f the last reasoned state court decision adopts or substantially incorporates the reasoning from a previous state court decision, [this court] may consider both decisions to 'fully ascertain the reasoning of the last decision.'" Edwards v. Lamarque, 475 F.3d 1121, 1126 (9th Cir. 2007) (en banc) (quoting Barker v. Fleming, 423 F.3d 1085, 1093 (9th Cir. 2005)). "When a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary." Richter, 562 U.S. at 99. This presumption may be overcome if "there is reason to think some other explanation for the state court's decision is more likely." Id. (citing Ylst v. Nunnemaker, 501 U.S. 797, 803 (1991)). Similarly, when a state court decision rejects some of petitioner's claims but does not expressly address a federal claim, a federal habeas court must presume, subject to rebuttal, that the federal claim was adjudicated on the merits. Johnson v. Williams, 568 U.S. 289, 293 (2013). When it is clear that a state court has not reached the merits of a petitioner's claim, the deferential standard set forth in 28 U.S.C. § 2254(d) does not apply, and a federal habeas court reviews the claim de novo. Stanley, 633 F.3d at 860.

## ANALYSIS

### I. Claim One: Failure to Preclude Prejudicial Testimony

Raising only one ground for habeas relief, petitioner claims that the trial court erred in admitting Sergeant Lange's testimony identifying petitioner as the man in the surveillance video. He asserts that this testimony should have been excluded under California Evidence Code 352. (ECF No. 15 at 5.) In response, respondent argues that the state court's rejection of the evidence admission claim was reasonable. (ECF No. 31 at 6–7.)

### A. State Court Opinion

Petitioner raised this claim in his direct appeal. In the last reasoned state court decision, the California Court of Appeal considered and rejected the claim:

////

*Identification Testimony*

Defendant contends the trial court erred in admitting Sergeant Lange's testimony identifying defendant in the surveillance video. He concedes that "the court was well within its discretion in finding" the testimony would assist the jury and agrees that it was "well established that Sergeant Lange had personal knowledge of [defendant's] appearance." But he asserts the court's failure to preclude the testimony under Evidence Code section 352 was error. We disagree.

**A.** *Background*

Defendant moved in limine to preclude Lange's identification testimony, arguing that it was unnecessary and prejudicial. The prosecutor argued defendant was now wearing glasses and was without a hat, whereas in the video he had on a hat but no glasses. Further, because the jury would hear of defendant's multiple contacts with police and extensive criminal and gang activity from other witnesses, Lange's description of multiple non-criminal contacts with him would not be prejudicial.

The trial court held an Evidence Code section 402 hearing wherein it examined the video surveillance and heard Lange testify about his multiple contacts with defendant over a 15-year period and his familiarity with defendant's appearance and mannerisms. The court held the testimony was admissible as it would be helpful to the jury; the actual shooting was not on the videos and the only video showing defendant with a gun was brief and at an unhelpful angle. The court found Lange's testimony short, probative, and not unduly prejudicial under Evidence Code section 352.

At trial, Lange testified that he contacted and arrested gang members as a patrol officer. He participated in at least one hundred gang investigations. He first met defendant when he was a new patrol officer in 1999 and his last contact with defendant was in October 2014 when he had a brief conversation with defendant while on patrol at Haginwood Park. Lange could give a date and time to at least six other contacts with defendant, and believed he contacted defendant at least an additional 10 times. He testified that he had first been asked to identify the person from a still photo from one of the surveillance cameras, and had identified the person as defendant. He then had watched the entire surveillance video and there was no doubt in his mind that defendant was the person carrying the handgun while leaving the club.

**B.** *Analysis*

A lay witness may testify to an opinion when it is rationally based on the perception of the witness and is helpful to a clear understanding of the witness's testimony. (Evid. Code, § 800.) Admission of lay opinion testimony is within the trial court's discretion. (*People v. Mixon* (1982) 129 Cal.App.3d 118, 127.)

Evidence Code section 352 permits the exclusion of relevant

evidence where "its probative value is substantially outweighed by the probability that its admission will (a) necessitate undue consumption of time or (b) create substantial danger of undue prejudice, of confusing the issues, or of misleading the jury." (Evid. Code, § 352.) We review a trial court order denying a motion to exclude evidence under Evidence Code section 352 for abuse of discretion. (*People v. Lindberg* (2008) 45 Cal.4th 1, 49.)

We first reject the Attorney General's argument that defendant forfeited this claim of error by failing to object at trial. Although the Attorney General attempts to parse defendant's many objections to argue that he never claimed other witnesses adequately identified him, it is clear defendant brought the adequacy issue to the trial court's attention. It is also clear that the court recognized the issue when it opined that "in weighing possible prejudice, [it] must determine if the nonlaw enforcement testimony available is adequate."[2]

[N.2 Although defendant argues on appeal that the trial court "had gotten it right" when making that observation, but "simply failed to make that determination" in its later ruling, we observe that the court *did* implicitly determine that the non-law enforcement testimony was not so adequate that, together with other considerations, Lange's identification was rendered more prejudicial than probative when it ruled that Evidence Code section 352 did not prohibit its introduction.]

In *People v. Perry* (1976) 60 Cal.App.3d 608, we addressed when a non-percipient witness may testify to an identification based on a recorded image. In *Perry*, a movie camera recorded a robbery. A peace officer recognized Perry from the recording "based upon past recollection of [Perry's] appearance from numerous street contacts during the preceding five-year period and the fact that [Perry] had an abnormal-appearing eye." (*Id.* at p. 610.) At trial, Perry unsuccessfully objected to this testimony, as well as testimony by Perry's parole officer, who identified the person on the film as Perry "on the basis of general facial features, his height and the abnormal right eye." (*Id.* at pp. 611-612.) On appeal, the defendant asserted only a percipient witness may give nonexpert opinion testimony on a person's identity. (*Id.* at p. 612.) We rejected the contention, finding, "[t]he witnesses each predicated their identification opinion upon their prior contacts with [Perry], their awareness of his physical characteristics on the day of the robbery, and their perception of the film taken of the events. Evidence was introduced that [Perry], prior to trial, altered his appearance by shaving his mustache. The witnesses were able to apply their knowledge of his prior appearance to the subject in the film. Such perception and knowledge [were] not available directly to the jury. The opinions of the witnesses were sufficiently based upon personal knowledge to permit their introduction; the question of the degree of knowledge goes to the weight rather than to the admissibility of the opinion. [Citation.]" (*Id.* at p. 613.)

*Perry* was applied in *Mixon,* where the Fifth Appellate District upheld Mixon's conviction and use of lay opinion testimony to

9

identify him. There, two police officers testified that they had seen an unclear surveillance photograph during their investigation of a robbery and, from their prior contacts with Mixon, identified him as one of the robbers, though he had shortened his sideburns and grown a moustache by the time of trial. (*People v. Mixon, supra*, 129 Cal.App.3d at p. 125.) The *Mixon* court construed *Perry* as requiring, as a predicate for the admissibility of lay opinion testimony as to the identity of persons depicted in surveillance photographs, that the witness testify from personal knowledge of the defendant's appearance at or before the time the photo was taken. (*Id.* at p. 128.) *Mixon* added that federal cases have expressed concern where the lay identification testimony comes from law enforcement officials, that such testimony will increase the possibility of prejudice in that the defendant is presented as a person subject to a certain degree of police scrutiny. (*Id.* at p. 129.)

*People v. Ingle* (1986) 178 Cal.App.3d 505 cited *Mixon* and *Perry* to announce that "[i]t is now clearly established that lay opinion testimony concerning the identity of a robber portrayed in a surveillance camera photo of a robbery is admissible where the witness has personal knowledge of the defendant at or before the time the photo was taken, and the witness had knowledge of the defendant's appearance at or before the time the photo was taken and his testimony aids the trier of fact in determining the crucial identity issue." (*Id.* at p. 513.) *Ingle* involved robbery of a liquor store and the identification of defendant in the surveillance video by the victim clerk. (*Id.* at pp. 508-510.) The actual issue on appeal was whether the witness's viewing of the videotape before identifying the defendant from a photo lineup violated due process. (*Id.* at pp. 511-512.)

Most recently, our Supreme Court has held that a ruling allowing a peace officer to identify a person on a surveillance recording is reviewed for an abuse of discretion. (*People v. Leon* (2015) 61 Cal.4th 569, 600.) Citing *Perry*, *Mixon*, and *Ingle*, *Leon* upheld the use of such lay opinion testimony, provided that the witness had a sufficient basis of knowledge to make the identification. (*Leon,* at pp. 600-601.)

Defendant's argument rests primarily on the cautionary language in *Mixon* about the potential prejudicial effect of a law enforcement officer giving lay opinion testimony identifying the defendant. From this language and the federal cases from whence the concern originates, defendant concludes it was improper to admit Lange's testimony in light of the allegedly inherent prejudice of having an officer testify, the relative clarity of the surveillance video, and the identification testimony of Derek's mother. But our Supreme Court did not express concern about any prejudice inherent in a peace officer identification of a defendant in a video or photograph when it upheld such testimony in *Leon*. (See *People v. Leon, supra*, 61 Cal.4th at pp. 600-601.) Thus, we reject the unsupported notion that such prejudice is *inherent* and instead analyze any potential prejudice pursuant to Evidence Code section 352.

////

10

> In any event, even if we assume that such identification testimony is concerning when coming from law enforcement due to the probable inference that the identified defendant had frequent contact with the police, here there was no such concern. This is because testimony other than Lange's independently and solidly established defendant's frequent contacts with the police due to his gang associations. (See *People v. Gionis* (1995) 9 Cal.4th 1196, 1214 ["The 'prejudice' referred to in Evidence Code section 352 applies to evidence which uniquely tends to evoke an emotional bias against the defendant as an individual *and which has very little effect on the issues.* In applying section 352, 'prejudicial' is not synonymous with 'damaging' "].) In establishing the foundation for his identification testimony, Lange testified he had frequent contacts with defendant, but did testify about any criminal conduct by defendant. Given the properly admitted gang evidence establishing defendant's extensive contacts with the police, there was no prejudice to defendant from Lange's testimony.
>
> The witnesses to the incident were unwilling to identify defendant. He does not dispute the prosecutor's assertion that he was wearing glasses in the courtroom but not in the video, and a hat in the video but not in the courtroom. Nor does defendant dispute that the video showing him pulling out the gun right before the shooting was brief and the angle unhelpful. The key issue in this case was the identity of the shooter. Thus, the probative value of identification by any one witness was high and the combined effect of identifications by multiple witnesses enhanced the cumulative probative value of their identifications in addition to corroborating each other's identifications. The purported prejudice does not substantially outweigh this probative value. Lange's identification testimony was clearly highly probative and, as we have discussed, not unduly prejudicial. While the victim's mother did identify defendant in the video, it was not an abuse of discretion to allow Lange to do so.

(ECF No. 30-10 at 4–9.)

**B. Discussion**

Petitioner argues that the trial court should have excluded Lange's identification testimony under California Evidence Code 352. This issue is a matter of state law and is not cognizable on habeas review. See Estelle, 502 U.S. at 67–68; Holley v. Yarborough, 568 F.3d 1091, 1101 (9th Cir. 2009) ("Simple errors of state law do not warrant federal habeas relief."); see also Horton v. Mayle, 408 F.3d 570, 576 (9th Cir. 2005) ("If a state law issue must be decided in order to decide a federal habeas claim, the state's construction of its own law is binding on the federal court."); Johnson v. Sublett, 63 F.3d 926, 930 (9th Cir. 1995). The erroneous admission of evidence is grounds for federal habeas corpus relief only if it made the state proceedings so fundamentally

unfair as to violate due process. See Jammal v. Van de Kamp, 926 F.2d 918, 919–20 (9th Cir. 1991).

Assuming the claim is cognizable, "[u]nder AEDPA, even clearly erroneous admissions of evidence that render a trial fundamentally unfair may not permit the grant of federal habeas corpus relief if not forbidden by 'clearly established Federal law,' as laid out by the Supreme Court." Holley, 568 F.3d at 1101; see also Walden v. Shinn, 990 F.3d 1183, 1204–05 (9th Cir. 2021); Nava v. Diaz, No. 18-16165, 816 F. App'x 192, 193 (9th Cir. Aug. 12, 2020). Because the Supreme Court has not clearly decided whether the admission of unduly prejudicial evidence constitutes a due process violation sufficient to warrant habeas relief, Holley, 568 F.3d at 1101, this Court cannot conclude that the state court's ruling was contrary to, or an unreasonable application of, clearly established federal law. See generally, Wright v. Van Patten, 552 U.S. 120, 126 (2008) (per curiam); Jennings v. Runnels, 493 F. App'x 903, 906 (9th Cir. Sept. 24, 2012); Bradford v. Paramo, No. 2:17-cv-05756 JAK JC, 2020 WL 7633915, at *6–7 (C.D. Cal. Nov. 12, 2020) (citing cases).

Petitioner's argument also fails on the merits. Admission of evidence violates due process only if the jury could draw no permissible inferences from the evidence. Jammal, 926 F.2d at 920 ("Even then, the evidence must 'be of such quality as necessarily prevents a fair trial.'"). After independently reviewing the record, this Court concludes that it was not objectively unreasonable for the state court to determine that the testimony was not prejudicial. The key issue at trial was identification of the shooter. As the state court noted, the Lange's identification testimony was based on his independent, verifiable frequent contacts with petitioner due to petitioner's gang associations and his review of the surveillance video and photos from the bar. (ECF No. 30-10 at 9; ECF No. 30-4 at 297–313.) Withing the context of the trial record, this Court concludes that Lange's identification allowed the jury to draw the permissible inference that petitioner was the shooter. See, e,g., James v. Soto, 723 F. App'x 451, 453 (9th Cir. 2018). It did not render the trial so fundamentally unfair as to violate due process. This Court recommends denying habeas relief.

////

////

**CONCLUSION**

Petitioner fails to meet the standards set out in 28 U.S.C. § 2254(d) by showing the state court decision on any claim was contrary to or an unreasonable application of clearly established law as determined by the Supreme Court, or resulted in a decision based on an unreasonable determination of the facts.

IT IS HEREBY RECOMMENDED that petitioner's petition for a writ of habeas corpus (ECF No. 15) be denied.

These findings and recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within thirty (30) days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any reply to the objections shall be served on all parties and filed with the court within seven (7) days after service of the objections. Failure to file objections within the specified time may waive the right to appeal the District Court's order. Turner v. Duncan, 158 F.3d 449, 455 (9th Cir. 1998); Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991). In the objections, the party may address whether a certificate of appealability should issue in the event an appeal of the judgment in this case is filed. See Rule 11, Rules Governing § 2254 Cases (the district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant).

Dated: July 13, 2023

DEBORAH BARNES
UNITED STATES MAGISTRATE JUDGE

Fair1107.hab